Case 2:08-cv-04821-JC   Document 19   Filed 10/21/09   Page 1 of 10   Page ID #:52

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY A. COVELL-DITTON,<br><br>  Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>  Defendant. | Case No. CV 08-4821 JC<br><br>MEMORANDUM OPINION |

## I. SUMMARY

On July 23, 2008, plaintiff Kimberly A. Covell-Ditton ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; July 29, 2008 Case Management Order ¶ 5.

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") regarding plaintiff's ability to do work are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On or about February 7, 2005, plaintiff filed an application for Disability Insurance Benefits. (Administrative Record ("AR") 15). Plaintiff asserted that she became disabled on May 9, 2003, due to "pain, fatigue, muscle fatigue, muscle spasms, muscle weakness. . . effects of medication. . . inability to concentrate [and] depression." (AR 15, 107). The Social Security Administration denied plaintiff's application initially and on reconsideration. (AR 24-25, 68-79). Plaintiff requested a hearing, which an ALJ conducted on September 18, 2007. (AR 67, 379-410). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel), and a vocational expert. (AR 379-410).

On September 24, 2007, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 15-23). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: "degenerative disc disease of the lumbar spine, obesity, and depression" (AR 17); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 17-18); (3) plaintiff retained the residual functional

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

capacity to perform a limited range of sedentary work[2] (AR 18, 21); (4) plaintiff could not perform her past relevant work (AR 21); and (5) plaintiff could perform jobs that exist in significant number in the national economy, such as production inspector, grader/sorter, and small items assembler of hospital products (AR 22-23).

The Appeals Council denied plaintiff's application for review. (AR 3-7).

///
///
///

---

[2]Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R § 404.1567(a).  The ALJ determined that plaintiff could perform sedentary work "except for no bending, stooping or forceful gripping and/or grasping."  He further concluded that plaintiff could perform simple, object oriented work that did not require hypervigilence and that she must be able to lie down during the lunch break. (AR 18).  The ALJ ultimately adopted the residual functional capacity (which plaintiff does not challenge), giving plaintiff the benefit of the doubt and finding greater limitations than any examining physician found to exist.  (AR 21).

Specifically, a consultative psychiatric examiner who diagnosed plaintiff with "depressive disorder not otherwise specified," found only mild impairment in plaintiff's ability to interact with others. (AR 262-67).  A consultative orthopedic/neurologic examiner diagnosed plaintiff with degenerative disc disease and arthritis in her right foot/ankle, and found that plaintiff could perform "secondary work," with limited standing and walking to 10-15 minutes per hour.  (AR 296-304).  A second orthopedic examiner, who noted plaintiff's height/weight, diagnosed plaintiff with only right foot sprain and lumbosacral strain, and found that plaintiff could perform medium work, limited to standing and walking four hours and sitting six hours in an eight hour day, with only occasional climbing, squatting, bending, stooping, and walking on uneven terrain. (AR 319-23).  Plaintiff's own treating physician who prepared a Permanent and Stationary Report for plaintiff's workers compensation claim found lesser limitations.  (AR 152-61).  Such physician found that plaintiff's spine disability prevented plaintiff from "heavy lifting and repeated bending," reducing plaintiff's ability to lift, bend and stoop by 50 percent.  (AR 159). The treating physician found that plaintiff's problem with her right lower extremity prevented her from "prolonged weight bearing," meaning that plaintiff could stand or walk 75 percent of her time working, and would require sitting 25 percent of her time working.  (AR 159).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit her ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform her past relevant work?[3] If so, the claimant is not disabled. If not, proceed to step five.

---

[3] Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. § 404.1545(a).

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

1  IV.   DISCUSSION

2  **The ALJ Did Not Materially Err in Relying on the Vocational Expert's**
3  **Testimony to Determine that Plaintiff Could Perform Work at Step**
4  **Five of the Sequential Evaluation Process**

5  Plaintiff contends that the ALJ erred in relying on the vocational expert's
6  testimony that there existed jobs that a person with plaintiff's residual functional
7  capacity could perform (*i.e.*, production inspector, grader/sorter, and small items
8  assembler of hospital products).  (AR 22-23 (adopting vocational expert's
9  testimony (AR 406-10)).   Plaintiff now claims that the vocational expert's
10 testimony purportedly was a "facial violation of. . . state law," and therefore
11 should not have been considered.  (Plaintiff's Motion at 3).  Specifically, plaintiff
12 asserts that plaintiff's need to "lie down during the lunch break" conflicts with a
13 California regulation concerning the working conditions for persons employed in
14 manufacturing, Cal. Code Regs. tit. 8, § 11010.

15 Section 11010(11) requires employers to provide employees with a "meal
16 period" of not less than 30 minutes for every five hours worked, where the
17 employee is "relieved of all duty." Cal. Code Regs. tit. 8, §§ 11010(11)(A), (C).
18 Plaintiff asserts that the ALJ should have required the vocational expert to explain
19 how a worker in a production environment could lie down during a lunch break,
20 consume a meal, and still comply with state law.  (Plaintiff's Motion at 6-10).

21    A.   **Applicable Law**

22 Where, as here the claimant meets her burden of establishing an inability to
23 perform past work at step four of the sequential evaluation process, the
24 Commissioner has the burden of proof to show, at step five, that the claimant can
25 perform some other work that exists in "significant numbers" in the national
26 economy (whether in the region where such individual lives or in several regions
27 of the country), taking into account the claimant's residual functional capacity,

28

age, education, and work experience.[4]  Tackett, 180 F.3d at 1100 (citing 20 C.F.R § 404.1560(b)(3)); 42 U.S.C. § 423(d)(2)(A).  The Commissioner may satisfy this burden, depending upon the circumstances, by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett).

A vocational expert's testimony may constitute substantial evidence of a claimant's ability to perform work which exists in significant numbers in the national economy when the ALJ poses a hypothetical question that accurately describes all of the limitations and restrictions of the claimant that are supported by the record.  See Tackett, 180 F.3d at 1101; see also Robbins, 466 F.3d at 886 (finding material error where the ALJ posed an incomplete hypothetical question to the vocational expert which ignored improperly-disregarded testimony suggesting greater limitations); Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001) ("If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value.").

**B.    Analysis**

In plaintiff's case, it is undisputed that the ALJ posed a hypothetical question to the vocational expert describing all of plaintiff's limitations the ALJ found to exist, including the need to lie down during her lunch break.  (AR 406-08).  Given a person with plaintiff's residual functional capacity, the vocational expert testified:

///

---

[4]Whether there are a "significant" number of jobs a claimant is able to perform with her limitations is a question of fact to be determined by a judicial officer.  Martinez v. Heckler, 807 F.2d 771, 775 (9th Cir. 1986).  See also Barker v. Secretary of Health & Human Services, 882 F.2d 1474, 1478 (9th Cir.), as amended (1989) (noting that Ninth Circuit has never established the minimum number of jobs necessary to constitute a "significant number").

> [T]here would be work available.  Examples would be production inspectors a [sic] the sedentary, unskilled level and examples would be eyeglasses or circuit boards, those types of things.  There are 850 positions in the region, more than 13,000 nationally.  There would be graders and sorters.  There are 500 positions in the region, 9,700 nationally. . . [¶¶] . . . [S]edentary, unskilled, small items assembly with an erosion because some of them would require use of hand tools which would potentially be forceful gripping and grasping.  Hospital products would be one example of many.  There'd be a 50 percent erosion allowing for 6,000 positions in the region. . . . [¶¶] . . .After the erosion, 6,000 positions in the region, 65,000 nationally.

(AR 407-08).  The vocational expert expressly affirmed, and plaintiff does not dispute, that such testimony was consistent with the Dictionary of Occupational Titles ("DOT").[5]  (AR 408).  As such, the vocational expert's testimony constituted substantial evidence upon which the ALJ could rely.  See, e.g., Spindel v. Commissioner Social Security Administration, 2009 WL 1416745 *2 (9th Cir. May 21, 2009) ("The ALJ may rely on testimony the vocational expert provides in response to a hypothetical that 'contained all of the limitations that the ALJ found credible and [was] supported by substantial evidence in the record.'") (quoting

---

[5] ALJs routinely rely on the DOT "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); see also 20 C.F.R. § 404.1566(d)(1) (DOT is source of reliable job information).  The DOT is the presumptive authority on job classifications.  Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).  An ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor.  Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing Social Security Ruling 00-4p).

Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005)).[6]

Plaintiff's suggestion that a California regulation should somehow render the vocational expert's testimony invalid because the regulations require a "meal break," and the vocational expert did not explain how plaintiff could consume a meal and lie down during the lunch break while working in a manufacturing environment, is unpersuasive for all of the reasons cited by defendant. (Defendant's Motion at 4-7). Although the Court agrees with all of the reasons cited by defendant for rejecting plaintiff's contention, the Court specifically addresses the following reasons herein.

First, the ALJ did not find (nor did any expert find) that plaintiff would have to lie down her entire lunch break. Plaintiff presumably could both consume a meal and lie down during her lunch break – even assuming the regulation set a thirty minute ceiling for a lunch period, rather than merely a thirty minute floor. Certainly, nothing in the California regulation prevents an employee from resting when she is "relieved of all duty" during the mandated meal period. Cf. Young v. Astrue, 2008 WL 4693514 *3 (M.D. Fla. Oct. 23, 2008) (no material error where ALJ misstated claimant's testimony that he needs to lie down after standing or sitting for about six hours, since claimant "seemingly could lie down at least at the lunch break" in order to work for eight hours). Accordingly, this Court finds no inconsistency between the vocational expert's testimony (upon which the ALJ relied) and the California regulation in issue.

Second, as the ALJ indisputably posed an accurate and complete hypothetical question to the vocational expert, such expert's testimony constitutes substantial evidence of plaintiff's ability to perform work which exists in significant numbers in the national economy, particularly where, as here, the

---

[6] The Court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007. See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a)).

testimony is consistent with the DOT and this Court has found no inconsistency between such testimony and the California regulation in issue.

Third, as noted above, step five requires a showing that a claimant can perform some other work that exists in "significant numbers" in the *national* economy (whether in the region where such individual lives or in several regions of the country).  See 42 U.S.C. § 423(d)(2)(A);  20 C.F.R § 404.1560(c).  Thus, even assuming the vocational expert's testimony was inconsistent with the California regulation in issue, there is no evidence suggesting that the vocational expert's testimony about the availability of jobs for a person with plaintiff's residual functional capacity in the *national* economy is compromised.

## V.     CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  October 21, 2009

                                                  /s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE